**IN THE**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>DAE YONG LEE and<br>940 HILL, LLC,<br><br>Defendants-Appellants. | ）C.A. Nos. 23-1687 & 23-1688<br>）D.C. No. CR 20-326-JFW(A)<br>）(Central Dist. Cal.)<br>）<br>）<br>）**GOVERNMENT'S**<br>）**OPPOSITION TO**<br>）**DEFENDANTS' MOTION TO**<br>）**EXPAND THE RECORD**<br>）<br>） |

Plaintiff-Appellee United States of America, by and through its counsel of record, hereby opposes defendants-appellants Dae Yong Lee and 940 Hill LLC's Motion to Expand the Record.

This opposition is based on the attached memorandum of points and authorities, the attached exhibits, the files and records in this case,

///

///

///

///

///

and such further argument or evidence as may be presented to the Court.

DATED: January 16, 2024   Respectfully submitted,

            E. MARTIN ESTRADA
            United States Attorney

            MACK E. JENKINS
            Assistant United States Attorney
            Chief, Criminal Division

            BRAM M. ALDEN
            Assistant United States Attorney
            Chief, Criminal Appeals Section

            /s/ *Cassie D. Palmer*

            CASSIE D. PALMER
            Assistant United States Attorney
            Deputy Chief, Public Corruption
            and Civil Rights Section

            MACK E. JENKINS
            Assistant United States Attorney
            Chief, Criminal Division

            Attorneys for Plaintiff-Appellee
            UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

In their joint opening brief, defendants-appellants Dae Yong Lee ("Lee") and 940 Hill, LLC ("940 Hill") (collectively, "defendants") raise a claim under *Batson v. Kentucky*, 476 U.S. 79 (1986), challenging the district court's rejection of their *Batson* objection to the government's peremptory strike against a prospective alternate juror who defendants claim was Asian.  The prosecutor stated that he did not perceive the juror as Asian, and the district court agreed.  Defendants now seek to expand the record with new evidence to support their claim and challenge the prosecutor's contemporaneous perception: an undated photograph from the social media site LinkedIn purportedly depicting the prospective juror.  The government disputes defendants' contention that the photograph accurately depicts the prospective juror's appearance at trial.

Use of Federal Rule of Appellate Procedure 10(e) to expand the record to include this disputed evidence is improper.  Their motion should be denied.

## II.  BACKGROUND

### A.  Offense Conduct

Defendants paid a $500,000 cash bribe in exchange for Los Angeles City ("City") Councilmember Jose Huizar and his aide George Esparza using their official positions to resolve an appeal that a union organization called CREED had filed against defendants' lucrative real estate project.  (Lee PSR ¶¶ 36-52.)[1]  The appeal halted the development process.  (Lee PSR ¶ 37.)  After defendants paid the bribe, the union dropped its appeal, and defendants' project was approved by the City.  (Lee PSR ¶¶ 48-49.)

A jury convicted defendants of honest services wire fraud and bribery, and additionally convicted defendant Lee of obstruction of justice for falsifying accounting records at his company (defendant 940 Hill) to cover up the bribe.  (CR 587, 589.)  The district court imposed a 72-month sentence on defendant Lee.  (CR 1129.)

---

[1] "CR" refers to the district court's docket.  "Lee PSR" refers the Presentence Investigation Report as to defendant Lee, which Lee filed at the same time as the defendants' Joint Opening Brief.  "GEX" refers to the attached exhibits.

B.    Defendants' *Batson* Challenge

During jury selection, defendants made a *Batson* objection to the prosecutor's peremptory strike against an alternate juror.  Juror No. 30 was an undergraduate student studying computer science, worked as a part-time grader at his school, was unmarried, had no children, had never served on a jury, and provided no other information.  (1-ER-126-27; GEX-2-3.)  When asked for a prima facie case, defense counsel stated, "I believe all the Asian jurors have been struck. I'm not sure, but there appears to be nothing other than the fact that he was Asian."  (1-ER-128-29; GEX-4-5.)  The prosecutor "disagree[d] that that juror was Asian" (1-ER-129; GEX-5), and the court indicated that it did too (*id.* ("That's my concern.")).  Defense counsel did not respond.  (*Id.*)

The prosecutor noted that defendants previously struck Asian jurors, whereas the government had not.  (*Id.*)  The government then offered its reasons for striking the juror:

> because he is a young student, provided very little information. He's a computer scientist, studying computer science. And we are typically uncertain of how computer scientists and college students will react to deliberating with other jurors.

3

(*Id.*)  The district court asked whether defense counsel wanted to respond, but counsel declined.  (*Id.*)  The district court found "that the Government struck that [juror] for a nondiscriminatory reason."  (*Id.*)

Notably, throughout trial the district court implemented COVID protocols, including mandatory masking of all persons present in the courtroom, including jurors.  (*See, e.g.*, 6-ER-1228, GEX-6 (Court: "I don't want anyone to be distracted or concerned relating to COVID, so everyone will wear a mask.").)

## C. The District Court's Denial of Defendant Lee's Motion for Bail Pending Appeal and Ex Parte Application to File the Photograph in Support of the Bail Motion

Following trial, defendants filed motions for acquittal and a new trial under Federal Rules of Criminal Procedure 29 and 33, neither of which raised a *Batson* claim.  (CR 627.)  After sentencing, defendants obtained new counsel, who filed a motion for bail pending appeal, which raised—for the first time—the *Batson* claim for which defendants seek to supplement the record.  (CR 1169.)   In conjunction with that motion, defendant Lee filed an ex parte application for leave to file the veniremember's photograph under seal.  (CR 1195.)

The district court denied defendant Lee's motion for bail pending appeal. (CR 1196.) In denying defendant Lee's bail motion, the district judge ruled there was no substantial question because (1) defendant Lee failed to make a prima facie showing under *Batson*, since the prosecutor did not perceive the juror as Asian and the government did not strike any other Asian jurors, and (2) the court had found no discriminatory intent based on the race-neutral justifications the prosecutor provided. (*Id.*) The district court also denied defendant Lee's request to file the veniremember's photograph under seal as moot, and further held that "[i]n any event, the veniremember[']s photograph would have no impact on the Court[']s ruling" on the bail motion. (CR 1197.)

## D. The Photograph

The photograph at issue was downloaded from a profile on the social media website LinkedIn, which profile bore Juror No. 30's name. The photograph is undated. Contrary to the defense counsel's suggestion, the government has never agreed that the photograph depicts the juror; instead, the government agreed the LinkedIn profile bore the juror's name but advised that the photograph does not appear to reflect the juror's appearance during voir dire.

5

### III.  ARGUMENT

### A.    The Photograph Is New Evidence, Not Evidence Omitted or Misstated By Error or Accident

Federal Rule of Appellate Procedure 10(e)(2) permits supplementation of the record only in narrow circumstances where "anything material to either party is omitted from or misstated in the record by error or accident."  It may not be used to add new material to bolster a defendant's arguments on appeal.  *See United States v. Boulware*, 558 F.3d 971, 975-76 (9th Cir. 2009) (refusing to consider new offer of proof in support of excluded defense theory); *Lowry v. Barnhardt*, 329 F.3d 1019, 1025 (9th Cir. 2003) ("The appellate process is for addressing the legal issues a case presents, not for generating new evidence to parry an opponent's arguments."); *United States v. Bischel*, 61 F.3d 1429, 1436 n.7 (9th Cir. 1995) (material offered to rebut perjury claim was "not a 'correction or modification' of the record within the meaning of F.R.A.P. 10(e) but a new, post-trial addition to it").

The photograph does not fall within the narrow exception of materials for which the record may be expanded on appeal under Rule 10(e)(2).  The photograph was not omitted by error or accident.  To the contrary, defendants did not address the *Batson* issue in their post-trial

motions for acquittal or new trial; instead, in seeking bail pending appeal and identifying issues for appeal, they sought "to build a new record" with materials they obtained after trial. *United States v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000).

More importantly, defendants seek to include the photograph in the record in order to challenge the prosecutor's factual statement regarding his perception of the juror's race, which was shared by the trial judge who was in the best position to assess it. *Jamerson v. Runnels*, 713 F.3d 1218, 1224 (9th Cir. 2013). (Motion at 4-5.) But whether the photograph accurately represents the juror's appearance at the time of voir is itself disputed—a curated photo on social media can be filtered, photoshopped to change a person's features, or otherwise modified, and may make a person look different based on lighting, camera functionality, age, haircut, sun exposure, or image quality. The jurors also wore masks during the trial. This Court cannot resolve the question of whether the photograph accurately depicts the juror as he appeared during voir dire. *See United States v. Sleugh*, 896 F.3d 1007, 1016 (9th Cir. 2018) ("[W]e do not engage in de novo fact-finding on

7

appeal."). Accordingly, neither Rule 10(e)(2) nor 10(e)(3) permit expansion of the record to include the photo.

Defendants' reliance on *Jamerson* is misplaced. *Jamerson* was a habeas case in which the petitioner raised a *Batson* claim challenging four strikes against black jurors as racially discriminatory. 713 F.3d at 1222. There, this Court considered whether the Supreme Court's decision in *Cullen v. Pinholster*, 563 U.S. 170 (2011) (holding that federal habeas review under 28 U.S.C. § 2254(d)(2) is limited to the record that was before the state court that adjudicated the claim on the merits) barred consideration in a federal habeas proceeding of driver's license photographs of the jurors showing the race of each venire member, where those photographs were not before the state appellate court. 713 F.3d at 1226. This Court held that such consideration was permissible "to the extent that those photographs merely reconstruct facts visible to the state trial court that ruled on the petitioner's *Batson* challenge." *Id.* at 1227. In other words, *Jamerson* allowed consideration of information that was available to the state trial court even if that information was not also presented to the state appellate

8

court. *McDaniels v. Kirkland*, 813 F.3d 770, 780 (9th Cir. 2015) (en banc).

*Jamerson* is easily distinguished. First, there did not appear to be any dispute in *Jamerson* that the struck jurors were black. Second, the driver's license photographs at issue in *Jamerson* were government documents, and thus were not amenable to alteration like the social media post here. Here, however, it is disputed whether the LinkedIn photograph accurately reconstructs facts (specifically the struck juror's physical appearance) as visible to the district court judge and the prosecutor during jury selection. *Jamerson* does not permit supplementing the record in these circumstances. 713 F.3d at 1227 (allowing consideration only "to the extent that those photographs merely reconstruct facts visible to the state trial court"); *see McClain v. Soto*, 600 F. App'x 549, 550 (9th Cir. 2015) (distinguishing *Jamerson* and declining to consider driver's license photos where prosecutor struck juror for extreme youth and there was no surety that such photos would accurately recreate relevant physical attributes that were visible to the state trial court).

**B.   Defendants' Motion Is More Properly Construed as a Motion to Take Judicial Notice of the Photograph, and Should Be Denied Because the Fact For Which Defendants Offer It Is Disputed**

Because the photograph was not omitted from the record by error or accident, defendants' motion is more properly construed as asking the Court to take judicial notice of the submitted photograph as accurately representing the prospective alternate juror's physical appearance during jury selection.

However, the photograph is subject to reasonable dispute and accordingly is not the type of fact which this Court can judicially notice on appeal.  *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").  Here, defendants' counsel found an online social media profile with Juror No. 30's name and a photograph, which is undated.  While the government agrees that the LinkedIn profile bore the juror's name, the accuracy of photograph cannot be readily determined because LinkedIn is not a source whose accuracy cannot reasonably be questioned.  Nor is the juror's race or physical

10

appearance "generally known within the trial court's territorial jurisdiction" as required under Federal Rule of Evidence 201(b). Further, the government does not agree that the photograph depicts the juror as he appeared during voir dire, and the district court declined to consider the evidence, reasoning that the photograph would have had no bearing on its determination of the *Batson* issue. Accordingly, the photograph is not the proper subject of judicial notice. *See United States v. Raygoza-Garcia*, 902 F.3d 994, 1001-02 (9th Cir. 2018) (declining to take judicial notice of defense counsel's searches of the PACER database and of Border Patrol Station data because it was not well established fact of which court could take judicial notice and could not be accurately and readily determined from sources whose accuracy cannot be reasonably questioned).

## IV. CONCLUSION

Defendants' motion to expand the record should be denied.

DATED: January 16, 2024               Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

BRAM M. ALDEN
Assistant United States Attorney
Chief, Criminal Appeals Section

/s/ *Cassie D. Palmer*

CASSIE D. PALMER
Assistant United States Attorney
Deputy Chief, Public Corruption &
Civil Rights Section

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

## CERTIFICATE OF COMPLIANCE

I certify that:

1.     This opposition complies with the 5,600-word length limit permitted by Ninth Circuit Rules 27-1(1)(d) and 32-3(2) because the brief contains 2,000 words, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

2.     This opposition complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016.

DATED: January 16, 2024          */s/ Cassie D. Palmer*

CASSIE D. PALMER
Attorney for Plaintiff-Appellee
UNITED STATES OF AMERICA

## GOVERNMENT'S EXHIBITS

**DESCRIPTION**                                                          **PAGE**

1.   EXCERPT OF REPORTER'S TRANSCRIPT OF PROCEEDINGS,
     Trial Day 1,
     June 14, 2022 ...................................................................................... 1

1

```
 1                UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3             HONORABLE JOHN F. WALTER, U.S. DISTRICT JUDGE

 4

 5   UNITED STATES OF AMERICA,        )
                                      )
 6                     Plaintiff,     )
                                      )
 7        v.                          )   Case No. CR 20-326(A) JFW
                                      )
 8   DAE YONG LEE,                    )        VOLUME 1
     940 HILL, LLC,                   )      (Pages 1 - 250)
 9                                    )
                       Defendants.    )
10   _____)

11

12                REPORTER'S TRANSCRIPT OF PROCEEDINGS
                            TRIAL DAY 1
13                    TUESDAY, JUNE 14, 2022
                            8:02 A.M.
14                    LOS ANGELES, CALIFORNIA

15

16

17

18

19

20

21

22   _____

23        MYRA L. PONCE, CSR NO. 11544, CRR, RPR, RMR, RDR
               FEDERAL OFFICIAL COURT REPORTER
24              350 WEST 1ST STREET, ROOM 4455
                LOS ANGELES, CALIFORNIA  90012
25                     (213) 894-2305
```

UNITED STATES DISTRICT COURT

GEX 1

125

```
 1   serve for a DUI.
 2              THE COURT:  All right.  And the DUI, did you
 3   deliberate?
 4              PROSPECTIVE JUROR FROST:  Yes.
 5              THE COURT:  Did the jury reach a verdict?
 6              PROSPECTIVE JUROR FROST:  Yes.
 7              THE COURT:  All right.  And do you have any "yes"
 8   answers to any of the questions on the longer questionnaire?
 9              PROSPECTIVE JUROR FROST:  Just No. 4.  Our home was
10   burglarized in, I believe, 2013.
11              THE COURT:  All right.  Thank you very much.
12              If you'll take -- go back and take Alternate Seat
13   No. 1.
14              And then Alternate No. 2, if you'll approach the
15   microphone, please.
16              PROSPECTIVE JUROR TENGBUMROONG:  Hi.
17              THE COURT:  Good morning.
18              PROSPECTIVE JUROR TENGBUMROONG:  My name is
19   Nicholas Tengbumroong.  I live in West Covina.  I'm currently
20   an undergraduate student.  I work part-time as a grader for my
21   school.  I am single.  I have no children.  I have not had any
22   prior jury service.
23              THE COURT:  All right.  And your highest educational
24   degree, you're an undergraduate student right now.  What are
25   you studying?
```

12:11PM — line 5
12:11PM — line 10
12:11PM — line 15
12:12PM — line 20
12:12PM — line 25

126

| | | |
|---|---|---|
| | 1 | PROSPECTIVE JUROR TENGBUMROONG:  Computer science. |
| | 2 | THE COURT:  All right.  And do you have any |
| | 3 | affirmative responses to any of the questions in the longer |
| | 4 | questionnaire? |
| 12:12PM | 5 | PROSPECTIVE JUROR TENGBUMROONG:  No. |
| | 6 | THE COURT:  All right.  Thank you very much. |
| | 7 | Let's have Alternate No. 3 approach the microphone. |
| | 8 | PROSPECTIVE JUROR PADILLA:  Okay.  My name is |
| | 9 | Lorraine Padilla.  I live in Norwalk.  I did a little college, |
| 12:12PM | 10 | not much.  I work for SpaceX.  I'm a composite technician.  No |
| | 11 | military service.  I'm married.  My husband is a union painter. |
| | 12 | I have five children, 40, 38, 30, 29, and 26. |
| | 13 | THE COURT:  I bet you know their birthdays, too. |
| | 14 | PROSPECTIVE JUROR PADILLA:  Yeah, I do. |
| 12:13PM | 15 | Okay.  And then I did one civil and we did reach a |
| | 16 | verdict. |
| | 17 | THE COURT:  All right.  What was the nature of the |
| | 18 | dispute in the civil case? |
| | 19 | PROSPECTIVE JUROR PADILLA:  It was a car accident. |
| 12:13PM | 20 | THE COURT:  Car accident. |
| | 21 | PROSPECTIVE JUROR PADILLA:  Fender bender. |
| | 22 | THE COURT:  How long have you worked for SpaceX? |
| | 23 | PROSPECTIVE JUROR PADILLA:  Nine years. |
| | 24 | THE COURT:  And prior to that, where did you work? |
| 12:13PM | 25 | PROSPECTIVE JUROR PADILLA:  MDA. |

**UNITED STATES DISTRICT COURT**

GEX 3

134

| | |
|---|---|
| | 1  gentlemen that you're going to give their clients -- each of |
| | 2  their clients a fair trial, you're going to listen to the |
| | 3  evidence -- |
| | 4  PROSPECTIVE JUROR GOLTERMAN:  Yes. |
| 12:23PM | 5  THE COURT:  -- listen to my instructions and |
| | 6  deliberate with your fellow jurors, and, if you can decide this |
| | 7  case based upon that evidence, you will make a decision? |
| | 8  PROSPECTIVE JUROR GOLTERMAN:  Yes. |
| | 9  THE COURT:  Okay.  Thank you. |
| 12:23PM | 10  MR. NEUMAN:  Your Honor, while we're here -- not |
| | 11  with you.  Just with us. |
| | 12  Your Honor, we have a concern, I guess, a Batson |
| | 13  challenge at this point regarding the fact that the only Asian |
| | 14  juror was just struck by the Government.  I just noticed that |
| 12:23PM | 15  there's no Asian jurors left, and there seemed to be nothing |
| | 16  about that juror that was interesting.  So -- |
| | 17  THE COURT:  All right.  Which -- which juror number |
| | 18  was it? |
| | 19  MR. NEUMAN:  I don't have it with me.  I can get it. |
| 12:23PM | 20  THE COURT:  Okay. |
| | 21  MR. NEUMAN:  It was Juror No. 30, who was Alternate |
| | 22  No. 2. |
| | 23  THE COURT:  All right.  Do you have a -- and what's |
| | 24  your prima facie case? |
| 12:24PM | 25  MR. NEUMAN:  At this point, Your Honor, I believe |

**UNITED STATES DISTRICT COURT**

GEX 4

135

|  | 1 | all the Asian jurors have been struck.  I'm not sure, but there |
|---|---|---|
|  | 2 | appears to be nothing other than the fact that he was Asian. |
|  | 3 | MR. JENKINS:  I can respond.  One, I disagree that |
|  | 4 | that juror was Asian. |
| 12:24PM | 5 | THE COURT:  That's my concern. |
|  | 6 | MR. JENKINS:  Just for the record. |
|  | 7 | Number 2, we've made no other strikes of any other |
|  | 8 | Asian jurors.  The defense has struck Asian jurors.  So if |
|  | 9 | there's no Asian jurors left, it's because of the defense. |
| 12:24PM | 10 | And the reason we struck that juror is because he is |
|  | 11 | a young student, provided very little information.  He's a |
|  | 12 | computer scientist, studying computer science.  And we are |
|  | 13 | typically uncertain of how computer scientists and college |
|  | 14 | students will react to deliberating with other jurors. |
| 12:24PM | 15 | For those reasons, that was -- we -- |
|  | 16 | THE COURT:  Okay.  Do you want to respond? |
|  | 17 | MR. NEUMAN:  No, Your Honor. |
|  | 18 | THE COURT:  All right.  I find that the strike |
|  | 19 | was -- that the Government struck that witness for a |
| 12:24PM | 20 | nondiscriminatory reason. |
|  | 21 | MR. JENKINS:  Thank you. |
|  | 22 | (In the presence of the prospective jurors:) |
|  | 23 | THE COURT:  All right.  Let me just make a note |
|  | 24 | here. |
| 12:25PM | 25 | The next peremptory with respect to the alternate is |

**UNITED STATES DISTRICT COURT**

GEX 5

36

|  |  | guidance relating to COVID-19 changes day by day, city by city, |
| --- | --- | --- |
|  | 1 | |
|  | 2 | or county by county.  I don't want anyone to be distracted or |
|  | 3 | concerned relating to COVID, so everyone will wear a mask. |
|  | 4 | Witnesses will wear masks and will be testifying |
| 10:08AM | 5 | behind plexiglass far away from you.  You should not draw any |
|  | 6 | conclusion or be influenced in any way based solely on whether |
|  | 7 | someone wears a mask during the course of this trial. |
|  | 8 | When you're questioned during the process of jury |
|  | 9 | selection, I will leave it to you whether you are willing to |
| 10:08AM | 10 | briefly lower your mask.  As you can see, our microphones are |
|  | 11 | physically distanced.  So unless it would cause you to be |
|  | 12 | concerned about your health or the health of someone close to |
|  | 13 | you, I would ask if you could please remove your mask while |
|  | 14 | being questioned. |
| 10:08AM | 15 | I also want to instruct each of you that from this |
|  | 16 | point forward and until the trial is over, you're not to |
|  | 17 | discuss anything about this case with anyone, including your |
|  | 18 | fellow jurors, members of your family, people involved in the |
|  | 19 | trial, or anyone else, nor are you permitted -- nor are you |
| 10:09AM | 20 | allowed to permit others to discuss the case with you.  If |
|  | 21 | anyone approaches you and tries to talk to you about the case, |
|  | 22 | please let me know about it immediately by giving a signed note |
|  | 23 | to our courtroom deputy. |
|  | 24 | A juror who violates my instructions jeopardizes the |
| 10:09AM | 25 | fairness of these proceedings and a mistrial could result, |