Consolidated Case Nos. 23-1687 & 23-1688

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

United States of America,
*Plaintiff-Appellee,*

v.

Dae Yong Lee and 940 Hill, LLC,
*Defendants-Appellants.*

_____

Consolidated Appeals from the United States District Court,
Central District of California, Case Nos. 2:20-cr-326-JFW-5 & -6,
Hon. John F. Walter

_____

## Appellants' Joint Reply Brief

_____

John L. Littrell, Cal. State Bar No. 221601
jlittrell@bklwlaw.com
Ryan V. Fraser, Cal. State Bar No. 272196
rfraser@bklwlaw.com
Bienert Katzman Littrell Williams LLP
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701

Attorneys for Defendants-Appellants
Dae Yong Lee and 940 Hill, LLC

# **TABLE OF CONTENTS**

I.    INTRODUCTION...............................................................................1

II.   UNREASONED PRIOR RESTRAINT OF INTERNET
      RESEARCH DURING JURY SELECTION ....................................3

     A.    The appellants had a First Amendment right to review social
          media during jury selection. ...................................................3

     B.    The government makes no attempt to show the First
          Amendment error was harmless.............................................6

     C.    De novo review applies because the defense objected and the
          district court's hasty ruling and turn to "other issues"
          precluded an opportunity to specify grounds. ........................6

     D.    Under *Weaver*, the error was structural................................9

     E.    Even if this Court reviews for plain error, it should reverse
          because the error is clear and structural. ...........................10

III.  REVERSIBLE *BATSON* RULINGS.............................................12

     A.    Review is de novo because the district court failed to perform
          the analysis required in *Batson* step three. ........................12

     B.    On de novo review, the record supports inferring that race
          was a substantial motivating factor. ....................................15

         1.    The government's attempts to counter pretext evidence
              are flawed and unpersuasive. ......................................15

         2.    The prosecutor's true perception of the struck
              venireperson's race is an important *disputed* fact for
              this Court to decide de novo........................................18

IV.   EXCLUSION OF CRITICAL EXCULPATORY EVIDENCE
      THROUGH MISINTERPRETATION OF THE HEARSAY RULE
      AND RULE OF COMPLETENESS .................................................. 19

      A.    Lee's questions and remarks in Exhibits 118A and 118B
            were not hearsay because they were not offered for the truth
            of intended assertions. ........................................................... 19

      B.    In light of the government's admitted clips, the rule of
            completeness and due process required admitting Exhibits
            118A and 118B. ...................................................................... 22

      C.    The government maximized the harm from excluding this
            unique exculpatory evidence ................................................. 23

V.    INSTRUCTIONAL ERRORS ......................................................... 25

VI.   DEFECTIVELY IMPOSED STATUTORY-MAXIMUM FINE ..... 29

      A.    Failure to determine the Guidelines range .......................... 29

      B.    Failure to explain the fine amount in proportion to the
            Guidelines range and omission of mitigating Guidelines
            factors .................................................................................... 31

      C.    Plain error does not apply but is satisfied. .......................... 32

VII.  CONCLUSION ............................................................................... 33

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alverio v. Sam's Warehouse Club, Inc.,*
253 F.3d 933 (7th Cir. 2001) ............................................................. 15

*Evalt v. United States,*
359 F.2d 534 (9th Cir. 1966) ............................................................... 8

*Gall v. United States,*
552 U.S. 38 (2007) ................................................................... 30, 31

*Green v. LaMarque,*
532 F.3d 1028, (9th Cir. 2008) .......................................................... 13

*Hernandez v. New York,*
500 U.S. 352 (1991) .......................................................................... 18

*Hoffman v. Cap. Cities/ABC, Inc.,*
255 F.3d 1180 (9th Cir. 2001) ............................................................. 6

*Kesser v. Cambra,*
465 F.3d 351 (9th Cir. 2006) ............................................................. 16

*Levine v. United States District Court for the Central District of
California,* 764 F.2d 590 (9th Cir. 1985) .................................. 3, 4, 10

*Lewis v. Lewis,*
321 F.3d 824 (9th Cir. 2003) ............................................................. 17

*McDaniels v. Kirkland,*
813 F.3d 770 (9th Cir. 2015) ............................................................. 14

*McDermott v. Johnson,*
85 F.4th 898 (9th Cir. 2023) ............................................................. 14

*McDonnell v. United States,*
579 U.S. 550 (2016) ........................................................... 25, 26, 27

*Miller-El v. Dretke,*
    545 U.S. 231 (2005)..........................................................15

*Nguyen v. Frauenheim,*
    45 F.4th 1094 (9th Cir. 2022) ........................................14

*Packingham v. North Carolina,*
    582 U.S. 98 (2017) ............................................................4

*Peoples v. Leon,*
    63 F.4th 132 (2d Cir. 2023) ..............................................5

*Rivera v. Illinois,*
    556 U.S. 148 (2009)..........................................................10

*Skilling v. United States,*
    561 U.S. 358 (2010)..........................................................29

*Stanley v. Georgia,*
    394 U.S. 557 (1969) ............................................................1

*United States v. Alvarez-Ulloa,*
    784 F.3d 558 (9th Cir. 2015)............................ 12, 13, 14, 15

*United States v. Barona,*
    56 F.3d 1087 (9th Cir. 1995)............................................29

*United States v. Becerra,*
    939 F.3d 995 (9th Cir. 2019)............................................12

*United States v. Brooks,*
    772 F.3d 1161 (9th Cir. 2014)............................................6

*United States v. Brown,*
    352 F.3d 654 (2d Cir. 2003) ............................................11

*United States v. Calderon,*
    No. 20-10234, 2021 WL 5027792 (9th Cir. Oct. 29, 2021)
    (unpublished) ....................................................................9

*United States v. Carpenter,*
    923 F.3d 1172 (9th Cir. 2019)............................................4

*United States v. Carty,*
520 F.3d 984 (9th Cir. 2008) (en banc) ................................... 30, 31, 32

*United States v. Charles,*
581 F.3d 927 (9th Cir. 2009) ............................................................ 11

*United States v. Chinchilla,*
874 F.2d 695 (9th Cir. 1989) ....................................................... 16, 17

*United States v. Collins,*
551 F.3d 914 (9th Cir. 2009) ............................................................ 12

*United States v. Cruz-Garcia,*
344 F.3d 951 (9th Cir. 2003) ....................................................... 23, 25

*United States v. Galecki,*
89 F.4th 713 (9th Cir. 2023) ............................................................ 27

*United States v. Hernandez-Garcia,*
44 F.4th 1157 (9th Cir. 2022) ......................................................... 12

*United States v. Kirkpatrick,*
589 F.3d 414 (7th Cir. 2009) ....................................................... 30, 31

*United States v. Kwon Woo Sung,*
704 Fed. App'x 669 (9th Cir. 2017) (unpublished) ........................... 32

*United States v. Lopez,*
4 F.4th 706 (9th Cir. 2021) ............................................................. 23

*United States v. Lopez-Alvarez,*
970 F.2d 583 (9th Cir.1992) ........................................................... 23

*United States v. Mancinas-Flores,*
588 F.3d 677 (9th Cir. 2009) ............................................................ 8

*United States v. Marquez,*
270 Fed. App'x 613 (9th Cir. 2008) (unpublished) ........................... 33

*United States v. Milheiser,*
98 F.4th 935 (9th Cir. 2024) ............................................................ 6

*United States v. Munoz-Camarena,*
631 F.3d 1028 (9th Cir. 2011) ............................................................ 30

*United States v. Orozco-Acosta,*
607 F.3d 1156 (9th Cir. 2010) ............................................................ 26

*United States v. Reyes,*
18 F.4th 113 (9th Cir. 2021) ................................................................ 8

*United States v. Rivera,*
682 F.3d 1223 (9th Cir. 2012) ............................................................ 32

*United States v. Torres,*
794 F.3d 1053 (9th Cir. 2015) ............................................................ 21

*United States v. Waknine,*
543 F.3d 546 (9th Cir. 2008) .............................................................. 32

*United States v. Wilcher,*
91 F.4th 864 (7th Cir. 2024) .............................................................. 33

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,*
425 U.S. 74 (1976) ....................................................................... 4, 5

*Weaver v. Massachusetts,*
582 U.S. 286 (2017) ........................................................................... 9

*Yates v. United States,*
354 U.S. 298 (1957) ......................................................................... 29

## Statutes and Rules

9th Cir. R. 36-3(a), ........................................................................... 9

Fed. R. Crim. P. 51 ................................................................... 7, 8, 32

Fed. R. Evid. 801 ...................................................................... 19, 20

## Other

*U.S. Sentencing Guidelines Manual* § 5E1.2(d)(6) (2021) ...................... 31

## I.   INTRODUCTION

The right, not only to express, but "to receive information and ideas, regardless of their social worth, is fundamental to our free society." *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) (citation omitted). The government refuses to acknowledge this Court has already held that trial participants have free-speech rights, too, though a prior restraint of trial participants' speech activity is subject to a stringent form of intermediate, rather than strict, scrutiny. Here, because the district court's outright ban on social-media research was unsupported by any factfinding or legal test, it unquestionably violated the First Amendment. Therefore, the government's attempt to treat this as a subtle or nonserious error must be rejected. Objection to the ban was preserved, and the government has waived harmlessness, which is all that this Court needs to decide. Regardless, even if the appellants had not objected, relief still would be appropriate, because the plain-error test is satisfied. Prior case law makes the error "plain," and its structural character establishes prongs three and four of plain error.

Similarly, the district court's unreasoned denial of Dae Yong Lee's *Batson* motion violated the Fifth Amendment. This Court must either

1

grant a new trial or remand to the district court to make factual findings.

The government's defense of the trial rulings excluding crucial defense evidence also fails. Mr. Lee's questions posed to Justin Kim were just that—questions. They lacked assertive intent; therefore, they could not be hearsay and were admissible to prove Mr. Lee did not know the information he was seeking.

The jury instructions likewise cannot stand because they permitted convicting based on a flawed legal theory that did not require an official act. The government compounded those errors by urging the flawed theory in closing. The government does not establish harmlessness beyond reasonable doubt.

Finally, the procedurally defective fine must be vacated. The government again argues unpersuasively that the error should be reviewed for plain error, even though the district court's ruling inherently rejected Mr. Lee's requests and arguments related to the fine. Alternatively, it was plain error to impose the statutory-maximum fine while ignoring pertinent mitigating Guidelines factors and refusing to determine a particular Guidelines range.

## II.   UNREASONED PRIOR RESTRAINT OF INTERNET RESEARCH DURING JURY SELECTION

The government stakes its entire defense of the district court's prior-restraint ruling on invoking plain-error review. If the plain-error standard does not apply, the government loses, regardless of whether the error was structural, because the government makes no attempt to show the First Amendment error was harmless.

Even assuming plain-error review applies, the government cannot prevail. It argues the error was not plain because no case has specifically found a First Amendment right to conduct internet research during jury selection. But, conspicuously, the government has no response to *Levine v. United States District Court for the Central District of California*, 764 F.2d 590, 595 (9th Cir. 1985), which recognizes that defendants and counsel have free-speech rights even during trial, which cannot be curtailed without satisfying a demanding three-pronged legal test. And, because the error was structural, as a matter of law, it satisfied the remaining elements of plain error.

### A.   The appellants had a First Amendment right to review social media during jury selection.

First Amendment speech rights include not only the right to express, but also the right to receive information, including especially

3

from social media, because they are "the most important place[] … for the exchange of views." *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017); *see Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976) ("clear" right to receive). Prior restraints on trial participants are subject to a three-prong test that constitutes at least intermediate scrutiny. *See Levine*, 764 F.2d at 595. But here, there was *no legal analysis at all* of the government's request to restrain the protected speech activity. *See* 1-ER-121.

Puzzlingly, the government questions that public social media have (1) "historically been open to the press and general public" and (2) that "public access plays a significant positive role in the functioning of the particular process in question," deriving these factors from *United States v. Carpenter*, 923 F.3d 1172, 1178 (9th Cir. 2019). Gov.'s Answering Br. ("GAB") at 34–35 n.3. *Public* social media appear to satisfy that test. Regardless, *Carpenter* is inapposite because it applies "when determining whether there is a First Amendment right of access *to criminal proceedings*." 923 F.3d at 1178 (emphasis added). Lee, 940 Hill, and their attorneys were not banned from accessing the proceedings; they were banned from passively reviewing social media.

The government argues *Packingham* has "little bearing" because it involved "social networking sites that provided mechanisms for users to communicate with each other," whereas the present case would have involved only "passive juror research." GAB at 35 n.3. But the ruling in *Packingham* cannot be interpreted as limited to protecting the right to exchange information through public social media without also protecting the right to receive it. Indeed, "[t]he Supreme Court's language in *Packingham* was broad." *Peoples v. Leon*, 63 F.4th 132, 142 (2d Cir. 2023). Given even convicted sex offenders' First Amendment rights under *Packingham*, it is all the more doubtful that the *pretrial* defendants here, who had no prior felony convictions, were presumed innocent, and posed no danger could, for no reason, be restrained from exercising their First Amendment rights to view public social media.

The government's attempt to minimize *Virgina State Board of Pharmacy*, 425 U.S. at 756, on the ground that "freedom of speech presupposes a willing speaker" doesn't make sense, either. GAB at 35 n.3. Venirepersons who maintained public social-media profiles did so willingly. The government also tries to distinguish advertising from social-media profiles. GAB at 35 n.3. But advertising, as commercial

speech, is *less* protected than noncommercial speech. *See, e.g., Hoffman v. Cap. Cities/ABC, Inc.*, 255 F.3d 1180, 1184 (9th Cir. 2001).

The government offers no reason to reject *Levine* and the Supreme Court's First Amendment case law. At a minimum, nondangerous criminal defendants and their counsel at trial cannot have their right to review public information on the internet curtailed without the government satisfying a test of First Amendment scrutiny. *See* AOB 28–30.

### B. The government makes no attempt to show the First Amendment error was harmless.

If the First Amendment error was preserved, then it is the government's burden to show harmlessness beyond reasonable doubt. *See, e.g., United States v. Milheiser*, 98 F.4th 935, 946 (9th Cir. 2024). The government could not have carried that burden in this case, but, regardless, the government waived harmlessness by failing to argue it. *See, e.g., United States v. Brooks*, 772 F.3d 1161, 1171 (9th Cir. 2014).

### C. De novo review applies because the defense objected and the district court's hasty ruling and turn to "other issues" precluded an opportunity to specify grounds.

The government says plain-error review applies because defense counsel did not expressly invoke the First Amendment in the district

court. GAB at 33–34. The government overlooks the context below and misinterprets what preservation requires. To be sure, plain error generally is appropriate where there was no objection in the trial court. But "[a] party may preserve a claim of error by informing the court— when the court ruling … is … sought—of the action the party wishes the court to take …. If a party does not have an opportunity to object …, the absence of an objection does not later prejudice that party." Fed. R. Crim. P. 51(b). Here, by stating that the defense intended to perform the research, counsel opposed the government's motion, thereby communicating the wish that the court take the action of denying the government's motion. With that, the district court ruled and moved on, depriving the defense of an opportunity to specify grounds.

Consider the entire one-minute exchange. The prosecutor orally moved to restrain "social media and Open Source research on proposed jurors." 1-ER-120:16–24 (8:10 a.m.). The district court asked defense counsel, "Do you intend to do that?" 1-ER-120:25 (8:10 a.m.). Counsel confirmed the defense did intend to perform such research and identified ethical boundaries. 1-ER-121:1–7 (8:11 a.m.). At that point, the district court summarily imposed the prior restraint and asked,

"Any *other* issues with respect to jury selection?" 1-ER-121:8–11 (8:11 a.m.) (emphasis added). This made clear the court had heard enough.

Further comment on the internet ban beyond this point would have constituted an exception, which is unnecessary for preservation. Fed. R. Crim. P. 51(a). Once the court rules, that is, a "defendant [does] not have to ask the court to reconsider its decision or point out possible errors in the decision." *United States v. Mancinas-Flores*, 588 F.3d 677, 686 (9th Cir. 2009). Relatedly, a party cannot fail to preserve an objection ground they received no real opportunity to specify. *See* Fed. R. Crim. P. 51(b)*; United States v. Reyes*, 18 F.4th 1130, 1134 (9th Cir. 2021) (deeming claim preserved because counsel received no "'real opportunity to object' further"); *Mancinas-Flores*, 588 F.3d at 686 ("[T]he Rules do not require a defendant to force an objection or exception into the record."); *Evalt v. United States*, 359 F.2d 534, 545 (9th Cir. 1966) (requiring no further objection after "the court . . . indicated, in no uncertain terms, what its views were"). Adhering to these safeguards is even more just here, where the government offered so little by way of supporting grounds for the prior restraint it sought.

In support of affirming on plain-error review, the government also cites the memorandum disposition in *United States v. Calderon*, No. 20-10234, 2021 WL 5027792, at *1 (9th Cir. Oct. 29, 2021) (unpublished). GAB at 37. But there, the Court applied plain-error review only because, unlike Lee and 940 Hill, Calderon "did not object…, despite having ample opportunity to do so." *Id.* at *1. By contrast, Lee and 940 Hill, through their counsel, *did* object. So even if *Calderon* were precedential, which it is not, *see* 9th Cir. R. 36-3(a), its reasoning does not apply.

### D.   Under *Weaver*, the error was structural.

The First Amendment error in this case was structural because (1) it was a constitutional error invading a right—*i.e.*, the right to receive speech—that was not designed to protect against erroneous conviction; (2) its effects defy measuring; and (3) imposing a prior restraint on a trial participant for no case-specific reason would always be fundamentally unfair. *See Weaver v. Massachusetts*, 582 U.S. 286, 295–96 (2017) (structural-error factors). The government has no response to *Weaver*, failing even to mention it.

9

The government's leading case on structural error, *Rivera v. Illinois*, 556 U.S. 148, 159–60 (2009), is inapposite. *See* GAB at 36. The claimed error in *Rivera* was the erroneous denial of one peremptory strike in violation of state law. *Rivera*, 556 U.S. at 161. The Court reasoned that because there was no federal constitutional violation, it was up to the state to determine the remedy. In contrast, the claimed error here is an unreasoned prior restraint of First Amendment rights. *Weaver* supplies the proper factors to determine whether that error was structural, and, as set forth in the opening brief, clearly it was.

### E. Even if this Court reviews for plain error, it should reverse because the error is clear and structural.

Even reviewing for plain error, the Court should vacate the convictions. Demonstrating the error's plainness, this Court held long ago that a restriction of trial participants' First Amendment activity is subject to at least intermediate scrutiny. *Levine*, 764 F.2d at 595. That is enough to make clear the error of imposing a complete ban on protected speech activity without *any* judicial scrutiny, factfinding, or legal test.

Moreover, "the 'plainness' of [a plain] error can depend on well-settled legal principles as much as well settled legal precedents" and be

10

apparent even "in the absence of direct precedent, or even where uniformity among the circuits, or among state courts, is lacking…. Such instances will typically involve," as here, "review of a potential constitutional error." *United States v. Brown*, 352 F.3d 654, 665 (2d Cir. 2003); *see also id.* at 664 n.9 (distinguishing "plainness" as a less demanding standard than the standard applicable to reviewing state convictions on a writ of habeas corpus or the "clearly established" rights test of qualified immunity). Although this Court has held an error is not plain if "there is no controlling authority on point *and … the most closely analogous precedent leads to conflicting results*." GAB at 34–35 (citing *United States v. Charles*, 581 F.3d 927, 933–34 (9th Cir. 2009) (quotation omitted)) (emphasis added), that is not the case here. The most closely analogous precedent, *Levine*, does not lead to conflicting results. *Levine* requires careful, multi-factor scrutiny—which the government does not argue could have been satisfied as to these defendants—before trial participants' First Amendment activity may be restrained. By not offering an alternative interpretation of *Levine*, the government effectively concedes this.

If the Court holds that the error was structural, as it should, then it must be corrected because, as a structural error, it necessarily affects substantial rights and undermines the fairness of a criminal proceeding. *See United States v. Becerra*, 939 F.3d 995, 1005–06 (9th Cir. 2019) (explaining that structural errors satisfy these plain-error requirements without regard to any effect on the verdict).

## III. REVERSIBLE *BATSON* RULINGS

The government's *Batson* response applies the wrong standard of review, assumes the prosecutor's denial of recognizing the struck juror's race should be accepted at face value, and argues, contrary to Supreme Court precedent, that comparative jurors must be virtually identical.

### A. Review is de novo because the district court failed to perform the analysis required in *Batson* step three.

The government relies heavily on deferential review, while ignoring the applicable cases cited by the defense on the standard of review. *See* GAB at 42–49; AOB at 36. To be clear, this Court "review[s] de novo whether the district court properly applied *Batson*." *United States v. Alvarez-Ulloa*, 784 F.3d 558, 565 (9th Cir. 2015) (citing *United States v. Collins*, 551 F.3d 914, 919 (9th Cir. 2009)); *see also United States v. Hernandez-Garcia*, 44 F.4th 1157, 1163 (9th Cir. 2022).

12

If the district court misapplied *Batson* procedures, then this Court follows either of two alternatives, neither of which involves deference. *See Alvarez-Ulloa*, 784 F.3d at 565–66. Ignoring *Alvarez-Ulloa*, the government advocates that this Court afford "great deference" to the district court on the ultimate question of whether race was a substantial motivating factor, GAB at 42, despite the district court's lack of explanation for its "nondiscriminatory" finding. *See* 1-ER-129.

The government also ignores the fact that the district court was required to consider whether the prosecutor's proffered reasons for the challenged strike were "'relevant to the case.'" *Alvarez-Ulloa*, 784 F.3d at 565 (quoting *Green v. LaMarque*, 532 F.3d 1028, 1030 (9th Cir. 2008)). A "'sensitive inquiry'" also was required "'into such circumstantial and direct evidence of intent as may be available'" before the motion could be denied. *Alvarez-Ulloa*, 784 F.3d at 565 (quoting *Green*, 532 F.3d at 1030). By failing to undertake any such analysis, the district court here erred procedurally. 1-ER-129.

The lynchpin of the government's argument for deference is that defense counsel in the district court did not counterargue the prosecutor's proffer of nondiscriminatory reasons for the challenged

strike. *See* GAB at 48–49. But the foregoing requirements of *Batson* step three do not depend on counterargument from defense counsel. *See Alvarez-Ulloa*, 784 F.3d at 565; *Collins*, 551 F.3d at 919. For example, neither the briefing to this Court nor this Court's opinion indicates Alvarez's counsel objected specifically to the district court's *procedure* for ruling on the *Batson* motion in the district court. *See Alvarez-Ulloa*, 784 F.3d at 565–66; 9th Cir. case no. 13-10500, dkt. no. 17 (opening brief). Nevertheless, review of the *Batson* procedure in *Alvarez-Ulloa* was de novo, and that district court erred, as this one did, because "precedents specifically require that the court *evaluate* the persuasiveness of the government's facially neutral reason." *Alvarez-Ulloa*, 784 F.3d at 565–66 (emphasis added).

To suggest otherwise, the government relies on *McDaniels v. Kirkland*, 813 F.3d 770, 778 (9th Cir. 2015), and *Nguyen v. Frauenheim*, 45 F.4th 1094, 1101 (9th Cir. 2022). *See* GAB at 28, 49. But, as inherently "doubly deferential" 28 U.S.C. § 2254 cases, they are inapposite. *See, e.g.*, *McDermott v. Johnson*, 85 F.4th 898, 911 (9th Cir. 2023) ("doubly deferential" review of § 2254 collateral attack).

Thus, the procedural review must be de novo. And whether race

14

was a substantial motivating factor is also reviewed de novo in this case because of the procedural errors. *See Alvarez-Ulloa*, 784 F.3d at 565–66.

## B. On de novo review, the record supports inferring that race was a substantial motivating factor.

The prosecutor's facially race-neutral reasons for the strike were not especially convincing to begin with, because they were vague and lacked a connection to the case. And ultimately, the government fails to overcome the defense's probative comparative juror analysis, offering no good explanation for the prosecutor's conspicuous denial of recognizing that the Thai-surnamed, clearly Asian-looking venireperson was Asian.

### 1. The government's attempts to counter pretext evidence are flawed and unpersuasive.

Each of the three race-neutral characteristics cited by the prosecutor in responding to the motion—"young student," "provided very little information," and "computer scientist"—was shared by a non-Asian venireperson the prosecutor had accepted.

Relying on *Alverio v. Sam's Warehouse Club, Inc.*, 253 F.3d 933, 941 (7th Cir. 2001), the government claims the comparators were not similarly situated because they had some differences from the subject of the strike. *See* GAB at 47–48. But, as the Supreme Court recognized

after *Alverio*, comparators need not be identical to be useful. *See Miller-El v. Dretke*, 545 U.S. 231, 247 n.6 (2005).

Moreover, by common sense, if *any one* of multiple proffered reasons for a strike appears pretextual, then race appears to have been a substantial motivating factor. After all, where race was not a motivating factor, the prosecutor generally can readily identify race-neutral reasons that will be consistent with their other choices to use a peremptory or not. Illustrating this, in *United States v. Chinchilla*, 874 F.2d 695, 698–99 (9th Cir. 1989), the conviction was reversed because "two of the four proffered reasons" for the challenged strikes did not hold up to comparative analysis, even though the prosecutor's other two claimed race-neutral reasons were not vulnerable. *See also Kesser v. Cambra*, 465 F.3d 351, 360 (9th Cir. 2006) (confirming "[a] court need not find all nonracial reasons pretextual in order to find racial discrimination"). In *Chinchilla*, moreover, one of the prosecutor's two invalidated race-neutral characteristics—residence in La Mesa—was deemed pretextual for no other reason than the prosecutor had declined to strike one other juror who also resided in La Mesa. *Id.* at 698.

By this standard, either juror number 2 or alternate number 4 alone undercuts the "young student" characteristic proffered by the prosecutor as a true reason for the challenged strike. Despite the government's attempts to distinguish these panelists based on their work experience, the fact that they were not *also* computer scientists takes nothing away from their tendency to undermine the credibility of the "young student" rationale. *Cf. Chinchilla*, 874 F.2d at 698–99. After all, the prosecutor had claimed that he exercised the challenged strike because he was "uncertain … how … college students [would] react to deliberating with other jurors." 1-ER-129:12–14.

The government also tries to cast aside alternate number 4 and the "software architect" from the subject of the challenged strike on grounds they had relatives in law enforcement. This fails. In *Lewis v. Lewis*, 321 F.3d 824, 832–33 (9th Cir. 2003), a pretext finding was warranted by two empaneled jurors sharing nonracial characteristics the prosecutor had proffered to explain the challenged strike. The comparators in *Lewis* did not merely have relatives in law enforcement; they were themselves a former police officer and a current "probation assistant." *Id.* Thus, a defendant can satisfy their *Batson* burden with

17

comparators who have some pro-government distinctions from the subject of the strike if they are otherwise similar enough.

The government's "[o]ther considerations" also fall flat. GAB at 46–47. The fact that *the defense* struck Asian venirepersons says little about the credibility of *the prosecutor's* response to the *Batson* motion. Similarly, the fact that the government struck five other people who were not Asian does not suggest the reasons proffered in response to the motion were sincere because the government used the only opportunity it received to strike an Asian venireperson. The government also commends itself for volunteering a proffer in response to the *Batson* motion. That is a weak indication of sincerity. *Hernandez v. New York*, 500 U.S. 352, 369 (1991), did not say volunteering information could overcome a *Batson* motion de novo. Rather, it was noted as part of a mix of evidence that could support affirmance on *clear-error review*, which does not apply here.

2. **The prosecutor's true perception of the struck venireperson's race is an important *disputed* fact for this Court to decide de novo.**

The government assumes this Court will accept the prosecutor's denial of recognizing the struck venireperson was Asian at face value,

18

declaring that "[t]hat subjective perception is critical." GAB at 43. But here, the struck juror's apparent race undermines the prosecutor's credibility. The struck venireperson stated his uniquely Thai surname before the entire courtroom and clearly appears to be racially Asian. The government's reliance on the prosecutor's claim of failing to perceive the juror's race only underscores the need to review the juror's photograph. *See* Mot. to Expand the Record, Dkt. No. 35.

## IV. EXCLUSION OF CRITICAL EXCULPATORY EVIDENCE THROUGH MISINTERPRETATION OF THE HEARSAY RULE AND RULE OF COMPLETENESS

### A. Lee's questions and remarks in Exhibits 118A and 118B were not hearsay because they were not offered for the truth of intended assertions.

The district court glossed over the core hearsay issue, which is whether, when Mr. Lee asked the questions and made the remarks on Exhibits 118A and 118B, *he intended* to implicitly or explicitly assert the truth of the proposition for which he offered the exhibits—i.e., that he did not know what Justin Kim had done with his money. *See* Fed. R. Evid. 801(a) (defining a hearsay "statement" as "a person's oral assertion, written assertion, or nonverbal conduct, *if the person intended it as an assertion*" (emphasis added)). As argued in the opening brief and below; *see* AOB at 17, 44–46; 3-ER-750–51; Mr. Lee did not

19

*intend* to assert that. Instead, he intended to *elicit from* Kim what Kim had done with the money. The government, like the district court, fundamentally fails to respond to this argument, giving short shrift to the decisive issue of what Mr. Lee intended. The evidence of intent must be analyzed.

It indicates Mr. Lee intended simply to find out what Kim had done with the money. There was no motivation for Lee to tell Kim, even implicitly, that he didn't know, because both knew that, as between them, only Kim knew what he had done with the money.

Tellingly, Kim's responses to "Who took the money? Did George take it all?" and "How much was given to the union?" were "yes" and "I don't know," respectively, 13-ER-3295, which differ significantly from "understood," "I see," or "I get it; you'll say you don't know"—the sorts of responses one should expect if Kim had understood the questions to be intended as implied assertions. Kim instead answered the questions as earnest questions because that is how he, the listener, understood them.

The government offers no competing interpretation of Lee's intent in posing the questions, even though it is the government's burden to show assertive intent. *See* Fed. R. Evid. 801 advisory committee's note.

Moreover, the minimal reasoning behind the government's position is flawed. The fact that the questions imply what they were offered to prove—Lee's lack of knowledge—is what makes them relevant; it does not determine admissibility. After all, every inquisitive question implies the questioner's lack of knowledge, but most questions aren't hearsay. Admissibility does not depend ultimately on whether a question implies the speaker's lack of knowledge. Instead, it turns on whether the speaker *intended* by asking the question to assert rather than elicit information. *Cf. United States v. Torres*, 794 F.3d 1053, 1061 (9th Cir. 2015). For example, in *Torres*, requests that took the grammatical form of questions were hearsay because the questions were offered to show the questioner's control, and the speaker *intended* to assert that control through the ostensible questions. *Id.* In the questions here, in contrast, Lee did not intend to assert anything; he intended to obtain information.

The district court committed legal error that is reviewable de novo or abused its discretion by excluding questions as hearsay without analyzing whether the government met its burden to establish the speaker *intended* them as an assertion of lack of knowledge.

21

### B. In light of the government's admitted clips, the rule of completeness and due process required admitting Exhibits 118A and 118B.

The government responds by suggesting that the admitted clips weren't misleading, because the government claims Lee "made similar implicit admissions in the excluded excerpts." *See* GAB at 55–56. That view is unrealistic. *See also* AOB at 47–48.

Among other distortions of the recorded conversation achieved by the government's selective presentation, the government had Kim testify that, on its Exhibit 118C, another excerpt from the same conversation, Mr. Lee effectively confessed having committed the "sin" of "bribery." *See* AOB at 47 (citing 11-ER-2746). That is not akin to the ambiguous remark identified by the government's brief from Exhibit 118B, in which Mr. Lee simply did not respond to Justin Kim's insinuation as it related to Mr. Lee, by remarking that Jose Huizar had "probably done tens and hundreds" of questionable or corrupt things. 13-ER-3297. The government's one-sided representation of the conversation could only be corrected by letting the jury consider Exhibits 118A and B.

**C.** **The government maximized the harm from excluding this unique exculpatory evidence.**

Exhibits 118A and 118B were central to the defense and unique as a snapshot into Mr. Lee's state of mind when he did not know he was being recorded. There was no substitute for such powerful and direct evidence of Mr. Lee's intent, a crucial disputed issue in the case. *Cf. United States v. Cruz-Garcia*, 344 F.3d 951, 957 (9th Cir. 2003).

The harmlessness standard for the exclusion of such important evidence is beyond reasonable doubt, *see United States v. Lopez-Alvarez*, 970 F.2d 583, 588 (9th Cir.1992), but the government fails to show harmlessness even by a preponderance standard. In attempting to do so, ironically, the government relies on a clip from another recorded conversation between Kim and Mr. Lee only one week after the conversation from which the defense's clips were excerpted to show harmlessness. *See* GAB at 57. But the excluded clips were necessary for the jury to understand properly the context of that very evidence.

This record in this case is very different from that of the government's leading harmlessness case, where the defendant took the stand and testified "that the clips presented by the Government were misleading." *United States v. Lopez*, 4 F.4th 706, 718 (9th Cir. 2021). In

*Lopez*, the government also had "reams" of text messages sent by the defendant that directly undermined his claimed ignorance of communicating with a minor. *Id.* Mr. Lee did not testify. And, apart from the government's cherry-picked clips, the government's mens rea case depended heavily on the credibility of a single witness, Kim, an admitted liar who was being rewarded for his testimony. *E.g.*, 12-ER-2799–2800.

Finally, the government relied heavily on the Kim-Lee recordings in its opening statement, closing argument, and rebuttal. *See* 6-ER-1365:24–1366:22 (opening statement) (emphasizing the recorded "drop in the ocean" remark without acknowledging the recorded exculpatory indications on the clips offered by Lee); 13-ER-3145:23–3147:4 (closing argument) (citing "Exhibits 118 and 119" without acknowledging Mr. Lee's questions on Exhibit 118A, and arguing that Mr. Lee's "words -- his own words, ladies and gentlemen, show that the defendants knew exactly where that money went, who it was intended for. Jose Huizar."); 13-ER-3200:14–3201:1 (rebuttal) (referring to defense counsel and urging that "[h]e left out a lot of context during the clips that he played of those recordings because he has to…. *[A]ll those recordings* … tell a

24

story of the defendant with a significant consciousness of guilt tr[ying] to figure a way out." (emphasis added)); 13-ER-3205:11–13 (rebuttal) (again faulting *defense counsel* for "play[ing] one clip of a recording and then just argu[ing] what it means and tak[ing] out all the other context from the recordings"); *Cruz-Garcia*, 344 F.3d at 957 (government's heavy reliance on a theory that would have been undermined by excluded evidence made error not harmless).

## V. INSTRUCTIONAL ERRORS

Despite acknowledging that *McDonnell*'s "official act" element applies to Count Five; *see* GAB at 62; *McDonnell v. United States*, 579 U.S. 550, 574 (2016); the government insists any "action eliminating the [CREED] appeal before it came to a vote in the PLUM committee" would have qualified. GAB at 62. Not so. Pressuring a CREED official to withdraw or dismiss CREED's appeal would not constitute an official act because:

> [s]imply expressing support for [a project under a public official's consideration] at a meeting, event, or call—or sending a subordinate to such a meeting, event, or call— … does not qualify as a decision or action on the [project], *as long as the public official does not intend to exert pressure on another* [*public*] *official* or provide advice, knowing or intending such advice to form the basis for an "official act." Otherwise, if every action somehow related to the [project]

25

> were an "official act," the requirement that the public official make a decision or take an action on that [project], or agree to do so, would be meaningless.

*McDonnell*, 579 U.S. at 573 (emphasis added).

Yet the district court refused the defense's request to instruct the jury accordingly. *See* 1-ER-169–70. The district court only told jurors what "may" suffice for an official act, without also telling them what *McDonnell* shows *does not qualify*—namely, mere pressure applied to a nonpublic official. *See* 1-ER-112–13. The instruction failed further to impose *McDonnell*-based limits on the "official act" element by not focusing the jury's attention on a PLUM Committee vote by Huizar as the only possible official act available for consideration. *Compare McDonnell*, 579 U.S. at 573 *with* 1-ER-112–13.

Responding, the government stretches the principle that the "defense is not entitled to particular language" too far. *See* GAB at 60–61 (citing *United States v. Orozco-Acosta*, 607 F.3d 1156, 1166 (9th Cir. 2010)). In *Orozco-Acosta*, "the district court read [the defendant's] requested defense theory instruction." 607 F.3d at 1166. The *Orozco-Acosta* district court refused only a minute instruction on interpreting circumstantial evidence that was based on California law. *See id.* In

contrast here, Lee and 940 Hill's requested jury instructions went to the heart of their theory that if the deal was only for CREED to be pressured, they were not guilty.

The government points out that courts sometimes consider denying relief for instructional error where the government has shown the error harmless beyond reasonable doubt. *See* GAB at 63 (citing *United States v. Galecki*, 89 F.4th 713, 741 (9th Cir. 2023)). The government has failed to make that showing. On the contrary, the discussion it invites only exposes how the instructions, a government argument that was effective because of its vagueness, and the general verdict form created unacceptable risk that the jury convicted based on an impermissible theory.

That is, the government claims that "the only theory [it] argued was that Esparza and Huizar leveraged Huizar's vote to pressure CREED to drop the appeal." GAB at 63. As argued above, even this theory violates *McDonnell*. *See* 579 U.S. at 573.

But also, take a closer look. The government presented the official-act requirement to the jury loosely. Thus, the government helped the district court let the jury contemplate convicting even without concrete

27

evidence of exploitation of Huizar's voting power in particular, rather than mere general pressuring. *See* 13-ER-3133:19–22 (implying that generally helping 940 Hill to resolve the CREED appeal in any way would constitute an official act); 13-ER-3138:12–14 (implying that a payment made generally "to make [the] appeal go away" would be a payment for an official act). The government also implied Huizar was satisfying his end of the charged official-act bargain with Mr. Lee merely by having Esparza meet with CREED "with the stamp of the city council power" and keeping Mr. Lee "in the loop" about those activities. 13-ER-3134:11–15. But the closing argument did not even try to identify how any figurative or literal "stamp" was actually used or had been agreed to be used. This blurred the line impermissibly, encouraging jurors to treat alleged conduct as an official act even though it would not satisfy *McDonnell*'s definition.

Compounding that problem, the district court refused the defendants' requested verdict forms, which would have specified the theory the jury found proven. *See* 4-ER-768–76. There is no assurance this jury convicted based on an official-act theory within *McDonnell*'s limits.

28

"[C]onstitutional error occurs" when a jury "returns a general verdict that may rest on a legally invalid theory." *Skilling v. United States*, 561 U.S. 358, 414 (2010) (citing *Yates v. United States*, 354 U.S. 298 (1957*)*). "Where the jury is presented with a legally inadequate theory, as opposed to a factually inadequate theory, *Yates* requires that the conviction be vacated." *United States v. Barona*, 56 F.3d 1087, 1098 (9th Cir. 1995). That is what happened here. Because of the district court's instructional error, the government was able to exploit a vague and shifting "pressuring CREED" theory to convict the defendants of Count Five without proving an official act beyond reasonable doubt.

## VI. DEFECTIVELY IMPOSED STATUTORY-MAXIMUM FINE

None of the government's attempts to patch over the district court's defective determination of the fine is persuasive.

### A. Failure to determine the Guidelines range

First, the government tries to downplay the district court's failure to determine the Guidelines range for the fine by positing that the correct Guidelines range was the highest of the various possibilities the district court's inconsistent remarks implied at different times. *See* GAB at 67–68 ("Although it is not clear whether the court utilized a fine range based on offense level 28 or 30, Lee was not prejudiced even if the

29

district court relied on a range of $30,000 to $300,000 …."). This overlooks the important role of the Guidelines range as a benchmark and anchor against a disproportionate upward variance. *See Gall v. United States*, 552 U.S. 38, 49 (2007); *United States v. Munoz-Camarena*, 631 F.3d 1028, 1030–31 (9th Cir. 2011) (observing the Guidelines range must "be kept in mind throughout the process" and the extent of justification required for a variance "necessarily is different when the range is different"). The government's "no prejudice" argument fails because "harmless error is possible only where the requirements of *Gall* and *Carty* are met." *Munoz-Camarena*, 631 F.3d at 1030 n.5 (referring to *United States v. Carty*, 520 F.3d 984, 990–94 (9th Cir. 2008) (en banc)). Where, as here, the district court never settles upon any particular Guidelines range, it violates *Gall*'s direction to use the Guidelines range as "the starting point and the initial benchmark." 552 U.S. at 49; *see also Munoz-Camarena*, 631 F.3d at 1031; *United States v. Kirkpatrick*, 589 F.3d 414, 416 (7th Cir. 2009) (emphasizing that "intellectual discipline remains vital" in incorporating recognition of the Guidelines into the sentencing decision). Refusing to determine a Guidelines range is not an option.

**B.  Failure to explain the fine amount in proportion to the Guidelines range and omission of mitigating Guidelines factors**

"[A] major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50; *see also Carty*, 520 F.3d at 991–92; *Kirkpatrick*, 589 F.3d at 415 ("Whenever a court gives a sentence substantially different from the Guidelines' range, it risks creating unwarranted sentencing disparities, in violation of 18 U.S.C. § 3553(a)(6), for most other judges will give sentences closer to the norm. That's a major reason why substantial variances from the Sentencing Commission's recommendations require careful thought."). The government offers no excuse for the district court's failure to explain the need to vary or depart upward from the Guidelines range all the way to the statutory maximum, *see* 1-ER-73–74, or its failure to address an important mitigating Guidelines factor. *See U.S. Sentencing Guidelines Manual* § 5E1.2(d)(6) (2021) ("whether the defendant previously [was] fined for a similar offense"); 1-ER-73:8–17 (district court omitting this factor); 1-ER-49:12–24 (urging the court to weigh not only Mr. Lee's ability to pay a fine, but also his "history and characteristics"). These serious procedural defects require vacating the

31

fine. *See Carty*, 520 F.3d at 993 ("[A] procedurally erroneous … sentence will be set aside.").

### C. Plain error does not apply but is satisfied.

Mr. Lee's counsel requested the district court:

- Determine the Guidelines range for the fine with reference to offense level 28; 1-ER-23:17;

- Impose a "within Guidelines fine" of $150,000; 2-ER-273;

- Consider that the statutory-maximum fine recommended by the government and Probation would be "more than double the Guidelines range" and therefore disproportionate to the aggravating factors pertinent to the fine; 2-ER-273;

- Not excessively base its fine on "the fact that he's a man of means"; 1-ER-49; and

- Take into account Mr. Lee's "history and characteristics" in deciding the fine; 1-ER-49; *see also* 3-ER-575.

When the district court's explanation of the fine effectively denied all these requests, Mr. Lee did not need to *re-raise* them. Fed. R. Crim. P. 51; *United States v. Rivera*, 682 F.3d 1223, 1234 (9th Cir. 2012) ("Under Rule 51 …, we have held that a defendant who has already made a request to the district court, and argued in favor of it, does not need to take exception to the court's decision after it has been rendered.… [N]or was defense counsel required to point out possible errors in the decision after it had already been made." (footnote

omitted)); *United States v. Wilcher*, 91 F.4th 864, 870 (7th Cir. 2024) ("Rule 51(a) applies when an error is 'created by' the ruling itself.").

Plain error would be satisfied anyway, because the error was obvious; likely made a difference, since the district court imposed the maximum without acknowledging mandatory mitigating factors; and incautious sentencing undermines the fairness, integrity, and public reputation of judicial proceedings. *See United States v. Waknine*, 543 F.3d 546, 554 (9th Cir. 2008); *cf. also, e.g.*, *United States v. Kwon Woo Sung*, 704 Fed. App'x 669, 670 (9th Cir. 2017) (unpublished); *United States v. Marquez*, 270 Fed. App'x 613, 614 (9th Cir. 2008) (unpublished).

## VII. CONCLUSION

The Court should vacate Lee's convictions and remand for a new trial. At a minimum, the Court should vacate Lee's fine.

Dated: June 3, 2024      Bienert Katzman Littrell Williams LLP

By: */s/ Ryan V. Fraser*
    John L. Littrell
    Ryan V. Fraser

    Attorneys for Defendants-Appellants
    Dae Yong Lee and 940 Hill, LLC

## CERTIFICATE OF COMPLIANCE

I am the attorney of record for Defendants-Appellants, Dae Yong Lee and 940 Hill, LLC, in Ninth Circuit case numbers 23-1687 and 23-1688.

This brief contains 6,522 words, including 0 words manually counted in an image, and excluding the items exempted by Federal Rule of Appellate Procedure 32(f). The brief's type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6).

I certify that this brief complies with the word limit of Circuit Rule 32-1.

Dated:  June 3, 2024          By: */s/ Ryan V. Fraser*
                                              John L. Littrell
                                              Ryan V. Fraser

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2024, I electronically transmitted the attached document to the Clerk's Office for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*/s/ Ryan V. Fraser*

Ryan V. Fraser